UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUE HONG, on behalf of herself and all others similarly situated,

Plaintiff,

v.

BANK OF AMERICA, N.A, individually and as successor-in-interest, QBE INSURANCE CORP., NATIONAL GENERAL HOLDINGS CORP., and DOES 1-10,

Defendants.

Case No. C20-1667RSM

ORDER GRANTING MOTIONS TO DISMISS

## I. INTRODUCTION

This matter comes before the Court on Defendant QBE Insurance Corporation ("QBE")'s Motion to Dismiss, Dkt. #30, and Defendant Bank of America, N.A.'s Motion to Dismiss, Dkt. #32, both brought under Rules 12(b)(1) and 12(b)(6). Plaintiff Sue Hong has filed a single brief responding to both Motions. Dkt. #40. The Court has reviewed the above briefing, as well as reply briefs from Defendants, and finds that oral argument is not necessary. For the reasons stated below, the Court GRANTS Defendants' Motions and dismisses this case.

## II. BACKGROUND[1]

Plaintiff Sue Hong owns a house in King County, Washington, with a mortgage serviced by Defendant Bank of America ("BOA" or "BANA")). Ms. Hong allowed her home insurance to lapse. Defendants stepped in to insure her property through a process called lender placed insurance ("LPI"). QBE filed its proposed LPI program and rates with the Washington State office of Insurance Commissioner in January of 2009. *See* Dkt. #33-2.[2] QBE's filing was approved by the OIC effective April 2009. *Id*. The application included the underlying rate used for LPI and the coverage methodologies for determining insurance premiums. *Id*. at 13–16.

Plaintiff's LPI coverage started on October 21, 2014, and was renewed annually. Defendants set coverage at $519,700, the same amount previously set by Ms. Hong when she obtained insurance on her own. *See* Dkt. #27 at 34. The cost of this coverage was $4,677.30 each year. Ms. Hong states in pleading that "[t]his practice apparently stopped with respect to Ms. Hong's LPI when the value of the FPI[3] was reduced beginning with the policy issued in October of 2016." *Id.*

Attached to the Complaint is Ms. Hong's Deed of Trust, which states, in part:

> **5. Property Insurance**. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. The insurance shall be maintained in the amounts … and for the periods that Lender requires….

---

[1] Except as otherwise noted, the following background facts are taken from Plaintiff's Second Amended Complaint, Dkt. #27, and accepted as true for purposes of ruling on these Motions to Dismiss.

[2] The Court takes judicial notice of QBE's filings with the Washington State Office of Insurance Commissioner. In ruling on a motion to dismiss, the Court may consider "materials incorporated into the complaint by reference, and matters of judicial notice." *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011). Courts may take judicial notice of undisputed matters of public record, such as documents on file with administrative agencies. *Palmason v. Weyerhaeuser Co.*, 2013 U.S. Dist. LEXIS 60161, 2013 WL 1788002, at *1 (W.D. Wash. Apr. 26, 2013).

[3] FPI here stands for "force-placed insurance." The Court believes Plaintiff uses LPI and FPI here interchangeably and it is unclear why both are used in the same sentence.

> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability, and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of the Borrower secured by this Security Instrument
>
> …
>
> **9. Protection of Lender's Interest in the Property and Rights Under this Security Agreement.** If (a) Borrower fails to perform the covenants and agreements contained in this Security instrument… then Lender may do and pay for whatever is reasonable or appropriate to protect the Lender's interest in the Property.

*Id.* at 32 (portions quoted in pleading); *id.* at 102 and 104 (attached Deed of Trust).

Plaintiff and her husband filed their first complaint in King County Superior Court on October 15, 2019. *See* Dkt. #33-1. After Bank of America removed the case and filed a motion to dismiss, Plaintiff voluntarily dismissed that case. *See* Case No. C19-1907-RSM, Dkt. #29.

The instant case was filed a year later in state court with similar claims. *See* Dkt. #1. Plaintiff filed an amended complaint on October 5, 2020. Dkt. #1-1. After removal, Plaintiff filed her Second Amended Complaint on December 16, 2020. Dkt. #27.

Plaintiff brings this case on her own and on behalf of a class of similarly situated customers. She alleges "BOA has an exclusive arrangement with QBE, National General, and other DOES 1-10, and their affiliates to manipulate the force-placed insurance market and charge borrowers more for LPI than permitted by the mortgage contract." Dkt. #27 at 25. BOA allegedly "pays QBE, National General, and other Does 1-10, premiums for master group policies which

cover BOA's entire portfolio of mortgage loans, and QBE, National General, and other DOES 1-10 then kicks back a portion of these premium payments through reimbursement of expenses and free or below-cost services unrelated to the provision of LPI." *Id.*

The Second Amended Complaint brings claims for breach of the Washington Consumer Protection Act ("CPA") and common law claims for breach of contract, violations of the duty of good faith and fair dealing, negligent supervision, breach of fiduciary duty, and civil conspiracy.[4] Plaintiff claims there is "a monopolistic arrangement between BOA, its mortgage servicing entities and its mortgage servicing vendors, QBE, and National General and other DOES 1-10," related to "lender placed insurance (LPI) on Sue Hong's property, and others similarly situated" to "charge her, and others similarly situated, amounts styled as insurance charges but which were, in fact, far greater than the actual costs of protecting the properties serving as collateral for the mortgage loans." Dkt. #27 at 2. Plaintiff states that she "does not challenge the practice of force-placing insurance" nor "the insurance rates charged by the FPI insurers nor the premium amounts paid by BOA to the FPI insurers." *Id.* Rather, she is only challenging "the amounts styled as FPI insurance charged to borrowers by BOA" because "[t]he amounts charged borrowers by BOA are not insurance premiums nor a pass-through of insurance premiums." *Id.*

## III. DISCUSSION

### A. Legal Standard

Under Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways: (1) a "facial" attack that accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction, or (2) a "factual" attack that contests the truth of the plaintiff's factual allegations, usually by introducing evidence

[4] All these claims are brought against both Defendants except the breach of fiduciary duty claim, which is brought against Defendant BOA only.

outside the pleadings. *Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014). When a party raises a facial attack, the court resolves the motion as it would under Rule 12(b)(6), accepting all reasonable inferences in the plaintiff's favor and determining whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction. *Id*. at 1122.

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id*. at 570.

**B. The Filed-Rate Doctrine**

In Washington State, the filed rate doctrine bars lawsuits that challenge the reasonableness of insurance rates filed and approved by a regulating agency. *Tenore v. AT&T Wireless*, 136 Wn.2d 322, 332, 962 P.2d 104, 108 (1998). This doctrine "provides, in essence, that any 'filed rate'—a rate filed with and approved by the governing regulatory agency—is per se reasonable and cannot be the subject of legal action against the private entity that filed it." *McCarthy Fin., Inc. v. Premera*, 182 Wn.2d 936, 347 P.3d 872, 875 (2015). Underlying the doctrine are two key

principles: "(1) to preserve the agency's primary jurisdiction to determine the reasonableness of rates, and (2) to insure that regulated entities charge only those rates approved by the agency." *Id*. (quoting *Tenore*, 136 Wn.2d at 331-32). Keeping the Court out of the role of determining the reasonableness of rates is often referred to as the principle of "nonjusticiability." Federal courts recognize a further principle underlying the doctrine: "that litigation should not become a means for certain ratepayers to obtain preferential rates (the principle of 'nondiscrimination')." *Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 261 (2d Cir. 2015). The doctrine "has often been invoked rigidly, even to bar claims arising from fraud or misrepresentation." *Tenore*, 962 P.2d at 108.

*Alpert v. Nationstar Mortg. LLC*, 243 F. Supp. 3d 1176, (W.D. Wash. 2017), cited heavily by Defendants, is a recent instructive case involving force-placed insurance obtained by a bank who issued a home mortgage loan to the plaintiff. The Court examined claims similar to those brought here and ruled that "the filed rate doctrine precludes Plaintiff from bringing any claims based on allegedly inflated premiums, even if Defendants engaged in a kickback scheme to arrive at those premiums." *Alpert*, 243 F. Supp. 3d at 1183.

Defendant QBE seeks to apply the *Alpert* holding here, arguing that all of Plaintiff's claims are premised on the assertion that her LPI premiums were too expensive or "inflated." Dkt. #30 at 14–15 (citing several portions of the Second Amended Complaint). Defendant BOA essentially makes the same argument. *See* Dkt. #32 at 10–11. QBE contends that "[r]egardless of whether the premiums were too expensive due to allegaed 'kickbacks' incorporated into the underlying rates or due to an 'unreasonable' coverage amount to which the rates were applied to determine the premiums, Plaintiff is challenging the cost of insurance policies based on rates and coverage methods the Washington OIC has reviewed and approved. Any judicial inquiry into

such allegations would violate the filed-rate doctrine's twin principles." Dkt. #30 at 15. Dismissal of all claims would therefore be warranted under Rules 12(b)(1) and 12(b)(6).

The Court agrees. All of Plaintiff's claims challenge the reasonableness of the underlying rate, counter to the nonjusticiability principle. Plaintiff does not plead with specificity any damages other than being overcharged. To determine the allegedly unlawful portion of Plaintiff's LPI premiums the Court would be required to re-examine the reasonableness of insurance rates that the Washington Office of Insurance Commissioner already approved as not "excessive, inadequate, or unfairly discriminatory." *See* RCW § 48.19.020. Such examination would "place the Court directly on the toes of the Insurance Commissioner, a situation that courts specifically contemplated when constructing the doctrine." *Alpert*, 243 F. Supp. 3d 1176, 1183. Plaintiff's claims are not merely incidental to agency-approved rates. She states in briefing that she "takes no interest in what BOA pays QBE and defendant insurers for the LPI product" and that she "does not seek damages tied to a filed rate," Dkt. #40 at 10–11, yet she pleads that the LPI premium is "inflated far above the reasonable cost of providing LPI coverage…" and that this inflated premium is then "charged by BOA to the borrower." Dkt. #27 at ¶¶ 46 and 81. To the extent she was damaged by Defendants' action in some way other than by being charged an inflated rate for LPI, she has not clearly pled such after many opportunities to do so. To the extent she is alleging that BOA obtained a lower rate as part of a special arrangement with an insurer and *could* have passed the savings on to her instead of taking the savings for itself through kickbacks, it is unclear that she has standing to bring this claim both due to the filed rate doctrine and a lack of actual damages under any cognizable claim.

Plaintiff argues that the filed rate doctrine does not apply to BOA because it was not a rate-filer. Dkt. #40 at 11. The Court disagrees. This Court has recently held that "courts

consistently acknowledge that the filed rate doctrine applies to claims against entities other than rate filers." *Benanav v. Healthy Paws Pet Ins., LLC*, 495 F. Supp. 3d 987, 997 (W.D. Wash. 2020) (citing cases).

Accordingly, the Court concludes that all of Plaintiff's claims are properly dismissed under Rules 12(b)(1) and 12(b)(6). The Court will nevertheless articulate additional reasons for dismissal of the following claims.

**C. Contract Claims**

QBE moves to dismiss the breach of contract and breach of good faith and fair dealing claims against it because "Plaintiff fails to allege any contract or agreement between herself and QBE." Dkt. #30 at 18. Plaintiff does not object to dismissal of these claims without prejudice and with leave to amend once discovery has been conducted.

The Court believes Plaintiff should know whether she was a party to a contract with QBE at this stage in the proceedings, and Plaintiff has failed to articulate how further discovery would reveal a new contract.

BOA also moves to dismiss. The contract at issue is the Deed of Trust, the applicable provisions of which are included in the Second Amended Complaint and detailed above. Plaintiff pleads that Defendants breached this contract by engaging in conduct outside of what was "reasonable or appropriate to protect the Lender's interest in the Property." Dkt. #27 at 39. BOA argues that its conduct squarely fit within the clear and unambiguous language of the Deed of Trust: "Lender is under no obligation to purchase any particular type or amount of coverage" and "Borrower acknowledges that the cost of insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained." Dkt. #32 at 16. BOA asserts that "Plaintiff's claim that Defendants breached the DOT by over-insuring her property (*see* SAC,

¶¶ 136-139) is defeated by its plain language." *Id*. BOA argues that Plaintiff cannot rely on Section 9 of the Deed of Trust that uses the phrase "reasonable and appropriate." That section states:

> If (a) a Borrower fails to perform the covenants and agreements contained in this Security Instrument, . . . then Lender may do and pay for whatever is reasonable or appropriate to protect the Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.

Dkt. #27 at 54. The section does not discuss LPI or other forms of insurance. Insurance is discussed in section 5, "property insurance." *Id*. at 53.

The Court agrees with BOA that the phrase "reasonable or appropriate" in the Deed of Trust restricts the Lender's actions to secure the property in ways other than insuring the property. This is clear from the plain language of the contract and the separation of insurance and other forms of protection into different sections. The Court finds that Plaintiff has failed to allege a breach.

BOA also argues that the good faith and fair dealing claim against it should be dismissed because:

> …the SAC alleges no more than that BANA exercised its express rights under the DOT to insure Plaintiff's property for "any . . . amount of coverage," after Plaintiff breached the DOT by failing to procure insurance. *See* SAC, Ex. 2 at ¶ 5. The fact that… the coverage was determined by Plaintiff's last known coverage amount only underscores the fact that Defendants operated in good faith.

Dkt. #32 at 20. BOA relies on *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 570 (1991) for the proposition that "[a]s a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms."

Plaintiff's duty of good faith and fair dealing cause of action merely pleads the elements without further detail. *See* Dkt. #27 at 39 ("The wrongful acts and representations of Defendants constitute violations of the duty of good faith and fair dealing which run with the contracts."). The Court finds that this claim cannot proceed as alleged against BOA for the reasons articulated by that Defendant. Accordingly, dismissal of all of Plaintiff's contract claims is warranted.

**D. Breach of Fiduciary Duty Claim against BOA**[5]

BOA argues this claim should be dismissed under the applicable statute of limitations and because it did not owe a fiduciary duty to Plaintiff. *See* Dkt. #32 at 25–28. A statute of limitations defense does not appear to apply here as Plaintiff alleges that BOA continues to use LPI on her property to this day, albeit with reduced coverage. However, the Court agrees with BOA that Plaintiff has failed to allege facts sufficient to establish a fiduciary duty. "[U]nder Washington law, a lender is not[, without more,] a fiduciary of its borrower; a special relationship must develop between a lender and a borrower before a fiduciary duty exists." *Westcott v. Wells Fargo Bank, N.A.*, 862 F. Supp. 2d 1111, 1119 (W.D. Wash. 2012) (internal citations and quotations omitted). No special relationship is formed when a lender engages in nothing more than the typical conduct of a lender. *See Miller v. U.S. Bank of Wash., N.A.*, 72 Wash. App. 416, 426–28 (1994). Here, BOA's alleged conduct *as it relates to Plaintiff* is consistent with the explicit language of the Deed of Trust and the typical conduct of a lender. Accordingly, no special relationship was formed and thus a claim for breach of fiduciary duty fails.

**E. CPA Claims**

A Consumer Protection Act ("CPA") claim requires proof of five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury

[5] Plaintiff does not plead this claim against QBE and explicitly states in briefing that she does not have sufficient facts to support such a cause of action. *See* Dkt. #40 at 26.

to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531, 533 (1986). Plaintiff's CPA claims turn on whether Defendants' LPI scheme constitutes an unfair or deceptive act or practice, but also on whether Plaintiff was injured.

A practice is "unfair" under the CPA if it causes injury to consumers "which is not reasonably avoidable by consumers themselves." *Alpert v. Nationstar Mortg. LLC*, 2019 U.S. Dist. LEXIS 41741, 2019 WL 1200541, *19 (W.D. Wash. 2019) (citing *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013)). An injury is "reasonably avoidable if consumers 'have reason to anticipate the impending harm and the means to avoid it,' or if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury after the fact." *Id*. at *21 (quoting *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168-69 (9th Cir. 2012)).

QBE argues:

> Plaintiff's alleged injuries — the "inflated" premiums charged for her LPI policies — were far from unavoidable. Had Plaintiff simply complied with her own mortgage's obligation to maintain insurance… she would never have been charged for LPI.

Dkt. #30 at 20. QBE relies heavily on *Alpert v. Nationstar Mortg. LLC*, 2019 U.S. Dist. LEXIS 41741, where the Plaintiff's CPA claim was ultimately dismissed on summary judgment.

The Court agrees with QBE's analysis above. Plaintiff has failed to allege an unfair practice that is not reasonably avoidable by consumers themselves. Furthermore, Plaintiff has failed to plead damages with more than mere labels and conclusions. Damages under the CPA are limited to injury to "business or property." For this claim, Plaintiff alleges only that she has "suffered damages in an amount to be proven at trial." Dkt. #27 at ¶ 166. Accordingly, this claim is properly dismissed.

**F. Negligent Supervision**

Defendants argue this claim should be dismissed under the applicable statute of limitations and because Plaintiff has failed to adequately plead the elements of this claim. In her Response, Plaintiff states "[a]t this time, Plaintiff agrees with Defendants that there are not sufficient facts known to adequately allege negligent supervision," and that she "has no objection to the court's dismissal of Count 3 without prejudice." *Id.* at 20. Plaintiff "asks permission to amend the Complaint to add this claim should evidence supporting it be found during discovery." *Id.*

Plaintiff alleges that Defendants placed excessive coverage on her property from October 21, 2014 through October 21, 2016. Dkt. #27 at ¶¶ 111–13. Plaintiff filed this action on October 5, 2020. Negligent supervision is subject to a three-year statute of limitations. RCW § 4.16.080(2).

Plaintiff has not set forth any reasonable basis that this claim could proceed. She has not argued, for example, that discovery could reveal that Defendants' actions, which injured her, continued past October 21, 2016. Given the procedural history of this case and Plaintiff's prior pleading, the Court finds that dismissal with prejudice is warranted.

**G. Civil Conspiracy**

Given that the claims that could underly a conspiracy claim have all been dismissed, this claim too is properly dismissed.

**H. Leave to Amend**

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Plaintiff has already amended her Complaint once and

has previously filed an action with similar claims. The deficiencies above are mainly legal in nature, not factual. Leave to amend will therefore not be granted.

## IV. CONCLUSION

Having reviewed the relevant pleadings and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendants' Motions to Dismiss, Dkts. #30 and #32, are GRANTED.

(2) All of Plaintiff's claims are DISMISSED with prejudice.

(3) This case is CLOSED.

DATED this 29th day of July, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE